W. Willard WIRTZ, Secretary of Labor, U. S. Dept. of Labor

v.

INDEPENDENT PETROLEUM WORKERS OF AMERICA, INC., LOCAL 1, INDEPENDENT OIL WORKERS UNION.

Civ. No. 5055.

United States District Court
N. D. Indiana,
Hammond Division.
July 3, 1969.

Charles Donahue, Solicitor of Labor, Herman Grant, Regional Atty., Joanne H. Saunders, Atty., Dept. of Labor, Chicago, Ill., Alfred Moellering, U. S. Atty., J. Frank Kimbrough, Asst. U. S. Atty., Hammond, Ind., for the Government.

William Belshaw, Green, Powers, Belshaw & Danko, Whiting, Ind., for defendants.

## MEMORANDUM

BEAMER, District Judge.

This is an action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, Title 29 U.S.C. §§ 481, 482,[1] brought by the Secretary

---

1. The statutes involved provide in part: Title 29 U.S.C. § 481:

(a) Every national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot.

(b) Every local labor organization shall elect its officers not less often than

of Labor for correction of certain alleged irregularities in the elections. The defendant is an incorporated labor union subject to the Act which represents the employees of the Standard Oil Whiting Refinery.

Based on the statements in the complaint, briefs of counsel, affidavits, and exhibits to the motions, the following is a partial rendition of the facts involved in this motion. The defendant incorporated labor organization represents the employees of Whiting Refinery. Its constitution apparently provides for the election of a seven-man board of directors by and from the active members of

once every three years by secret ballot among the members in good standing.

(c) * * *

(d) * * *

(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote ·or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. * * * The election officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter.

(f) through (i) omitted.

Title 29 U.S.C. § 482 provides:

(a) a member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 481 of this title, or

(2) that the violation of section 481 of this title may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. * *

the union in good standing as that term is specially defined. One member each is elected from seven divisions of employees by secret ballot. One Christ Summers, who was on a two year leave of absence without pay, applied for, obtained, and submitted a petition nominating himself for a position on the board of directors. (September 29, 1967.) On October 2, 1967, the Election of Representatives Committee rejected the petition for the reason that Summers was not an active member in good standing in that he was not an active employee of the Whiting refinery. On October 16, 1967, the Union conducted an extended hearing on the application of Christ Summers and confirmed its decision holding Christ Summers ineligible for office. On October 25, Christ Summers requested that he be given an absentee ballot for the election, on October 26, 1967, the election was held. On January 24, 1968, Christ Summers initiated his letter protesting (1) his ineligibility as a candidate, and (2) his ineligibility as a voter. On May 21, 1968, he filed his complaint with the Secretary of Labor. On July 1, 1968, the Secretary informed the defendant that it had investigated the complaint and found seven violations of the act. In the meantime, the defendant had conducted an election of its President, Vice-President, Secretary-Treasurer and Sergeant at Arms. These officers were elected from among the seven-man board of directors by that board of directors.

Further proceedings were had between the parties, including an agreed extension of time for filing the Secretary's action, and finally the Secretary brought this lawsuit. The complaint alleges five specific alleged violations of the Act, not specifically including the refusal to allow Christ Summers to run for the office of director or to vote in the election. As set out in the complaint they are:

Defendant violated Section 401 of the Act (29 U.S.C. 481) in the following respects in conducting its election between October 2, 1967, and October 26, 1967, and on November 1, 1967:

(1) Defendant failed to elect its President, Vice-President, and Secretary-Treasurer by secret ballot among the members in good standing in violation of section 401(b) of the Act (29 U.S.C. 481(b) ).

(2) Defendant denied its members in good standing the right to be candidates and to hold office by the imposition of unreasonable qualifications, in violation of section 401(e) of the Act (29 U.S.C. 481(e) ).

(a) by requiring candidates for all offices to have been members of the union for five years, and to have been employed at the Whiting Refinery for five years; and

(b) by requiring that its President, Vice-President and Secretary-Treasurer be chosen from among seven divisional representatives.

(3) Defendant, by imposition of the aforesaid unreasonable qualifications, denied its members in good standing a reasonable opportunity to nominate, and the right to vote for and otherwise support candidates of their choice, in violation of section 401(e) of the Act (29 U.S.C. 481(e) ).

(4) Defendant failed to preserve for one year the ballots and all other records pertaining to the election, in violation of section 401(e) of the Act (29 U.S.C. 481(e) ).

Defendant has filed its motion to dismiss raising various jurisdictional defenses, not including failure to exhaust internal remedies. Specifically it states:

(1) This court lacks jurisdiction of the subject matter because one Christ Summers did not file his complaint (as to his candidacy) with the plaintiff within the time limit prescribed by the applicable statute as mutually extended.

(2) This court lacks jurisdiction of the subject matter because the com-

plainant was not a member of the defendant labor organization.

(3) The complaint fails to state a claim upon which relief can be granted because the complaint is not based upon the initial allegations of the complainant filed with the Secretary.

(4) The complaint fails to state a claim upon which relief can be granted because no complaint based upon the initial allegations of the complainant was filed within the time limit prescribed by the applicable statute, as mutually extended.

(1) This Court lacks jurisdiction of the subject matter because one Christ Summers did not file his complaint (as to his candidacy) with the plaintiff within the time limit prescribed by the applicable statute.

Defendant contends that the one month period within which to file a complaint with the Secretary after exhaustion of internal remedies started when the union rejected Mr. Summers' candidacy on October 16, 1967. Title 29 U.S. C. § 482(a) (Footnote 1, *supra*). Plaintiff, however, contends that all remedies under this title of the Act are postelection remedies and that the period for filing a complaint with the Secretary did not start to run until after the election held on October 26, 1967, and specifically until after the complainant's letter of January 24, 1968, protesting the election. (*This letter was never acknowledged.*) Mr. Summers then filed his complaint with the Secretary on May 21, 1968, setting out the alleged violations. This letter was filed less than one month after the three month period, in which the complainant was required to await union action, expired.

If the period of limitations runs from October 16, 1967, when the defendant denied Mr. Summers' application to be placed on the ballot, then the complaint with the Secretary was untimely filed and this Court may be without jurisdiction. On the other hand, if the period of limitations does not start to run until after the election is held and the mem-

ber protests the manner in which it was conducted, then the complaint is timely filed.

The plaintiff's position is clearly substantiated by the scheme of the Act and the cases decided thereunder. Title IV of the Act provides one remedy for a violation—a new election. The statute itself speaks in terms of "the challenged election." (Title 29 U.S.C. § 482.) The period of limitations cannot be construed to commence before the election without destroying the scheme of internal control and post-election remedies established by the Act. Likewise, the member's appeal for internal redress would normally be made after the election is held. His prior appeals or actions, however, would not prejudice his post-election remedies.

In Wirtz v. Local 30, Intern. Union of Operating Engineers, 242 F.Supp. 631, 633 (S.D.N.Y.1965) modified on other grounds 366 F.2d 438 (2nd Cir. 1966) the Court said:

> Defendant claims that the complaining members of the union failed to exhaust their administrative remedies as required by the act, and that the suit was not timely filed. Title IV is intended to cover postelection remedies. Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Consequently, anything that the complainants did prior to that time is of no moment. They did exhaust their remedies after the election by again urging on the local and the International their complaints, which were rejected. This action was thereafter instituted by the Secretary within the time fixed by the statute.

The same result was reached in Wirtz v. H. H. Guy Lodge, No. 872, Broth. of Railroad Trainmen, 279 F.Supp. 873 (W.D.Pa.1967) at 874, where after quoting the above language, the Court said:

> We do not fail to note that the complaint in that case had invoked the internal grievance machinery prior to the election and had received their final rejection prior to the election,

whereas here the pre-election complaint to the union was not fully exhausted until after the election. We do not consider the distinction controlling because we believe the intent of Congress in establishing these as post-election remedies was to allow the labor organization full scope to review its own election after it had taken place, and after many pre-election grievances had resolved themselves by the results of the election.

Based on these cases, and the obvious intent of Congress in providing post-election remedies, it is held that the complaint was timely filed with the Secretary of Labor after the election, and the defendant's motion to dismiss may not be granted on the first ground urged.

(2) This Court lacks jurisdiction of the subject matter because the complainant was not a member of the defendant labor organization.

Defendant contends that Christ Summers was not a member of the labor organization within the meaning of the Act. Title 29 U.S.C. § 402(o), which is the general definition section of the Act, states:

"Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.

The affidavit of Christ Summers submitted in opposition to defendant's motions establishes that he was employed by the American Oil Company at the Whiting Refinery in 1944 and has been a member of the Independent Petroleum Workers of America, Inc., Local 1. It further establishes that he became ill and went on sick leave and vacation benefits from November 1965 to February 1967. During that portion of the period when he received full pay, he paid his union dues. For that portion of the period he was on half pay, he sought and received a refund of his union dues. In February, 1967, he was granted, and commenced, a two year leave of absence without pay, during which time he did not pay dues. Article IV, Section 5 of the union Bylaws which sets out the provisions regarding payment of dues is attached as Exhibit I to the Summers affidavit. It provides in part:

(d) Whenever a Union Member is sick and goes on half-pay, he shall be refunded his Union Dues for the period of time that he was on half-pay, upon his request.

(e) Any member who becomes delinquent in the payment of dues shall be deemed suspended, except where the member is on layoff, leave of absence, or on strike. Any member so suspended may be reinstated by the payment of dues, beginning with the month in which he is reinstated.

The Union by laws regarding elections and qualifications for office also provide, however, that, "A 'Member in Good Standing' is hereby defined as a member whose dues are paid, and is an active employee of the Whiting Refinery", and they further provide that only members in good standing, as thus defined, are eligible to serve as directors of the defendant corporation. (Article II, Section 1(g) ) (Quoted in Exhibit II to the affidavit, which is a copy of the letter informing the affiant he was not qualified to run for the post of director.) Exhibit A to the affidavit of K. M. Bazar, an investigating officer of the Department of Labor, who states he obtained the attached records in the regular course of investigation, is a copy of the minutes of the hearing at which the union determined Mr. Summers was not eligible to run for office. There, after considerable discussion, the committee apparently determined that Mr. Summers was, *"Mr. Rosen:* You are an Inactive Member of this Union, in good standing, Under Article of Contract, Article IV, Section 5(c) and (d)." (p. 2.)

Article III, Section 3 also required a member to be an active employee of the Whiting Refinery or a "member in good standing" to be eligible to vote.

▮▮▮ Defendant argues that the union's definition of "member in good standing" is controlling and that Christ Summers was not such a member. Plaintiff contends that the statutory definition is controlling, that Mr. Summers was a member within its terms and was eligible to vote. It is held that the statutory definition is controlling, for purposes of filing a complaint. Congress adopted that plan as part of the comprehensive plan for the protection of union members. To allow union constitutions or by laws to supersede that definition for purposes of invoking the Act's protection would invite destruction of guaranteed rights. The union might have legitimately provided that any person failing to pay his dues would be suspended, or perhaps, even that any person not actively employed at the refinery could have been given a non-disciplinary suspension. It did not do so. Rather, it provided that persons on leave of absence were not required to pay dues and were not suspended. Therefore, since Christ Summers had "fulfilled the requirements for membership and had not been suspended" he was a member of the defendant union for purposes of invoking the remedies provided in the Act. It is therefore held that the defendant's motion to dismiss cannot be granted on the second reason urged.

It is also noted that the plaintiff has cited the case of Wirtz v. Local Union 57, 57–A, 57–B, & 57–C, International Union of Operating Engineers, 293 F. Supp. 89 (U.S.D.C. R.I., Nov. 12, 1968) which held that any union member, whether he is the one directly affected by an alleged violation of the Act or not, may bring a complaint.

(3) The complaint fails to state a claim upon which relief can be granted because the complaint is not based upon the initial allegations of the complainant.

The original complaint of Christ Summers, addressed to the local union dated January 24, 1968, and contained as Exhibit IV to his affidavit in opposition to the motion, challenged only the union's refusal to (1) permit him to be a candidate for the office of director, and (2) allow him to vote in that election. It requested that a new election be held.

His letter to William Halper, President of the Independent Oil Workers of America, on March 22, 1968 (Exhibit V to the affidavit of Christ Summers) specifically challenged the local's refusal to allow him to (1) be a candidate for director and (2) vote. It further stated:

2–14–68—I posted a letter indicating some possibilities & after affects [sic] may result if the union persist in their present position (union headquarters) J. J. Sotak removed same—

This letter contained the fact that— 'The Election of Officers is in violation of the L.M.R.D.A.—Under—'Election of Officers—(also example Clerical Union at Sinclair refinery.)

Other violation may be—or result in voidance of entire election 10–26–67

Unlawful expenditures—

Revised election and qualification methods

legality of the newly instituted by laws etc.

Legal action may ensue to the individuals and the organization.

Finally, petitioner's complaint (letter) dated May 21, 1968 to the Secretary of Labor specifically complained that he was deprived of his "right to vote and the right to be a candidate in the election for representative held on October 26, 1967 and November 1, 1967." The complaint further stated, "I have informed Mr. William Halper, President of the Independent Oil Workers Union of my protest to the local, in addition that the local was in violation of the Labor Management Disclosure Act 1959, in the method of electing the Local Union officers. Insomuch as the Board of

Directors elect the President, Vice-President, Secretary-Treasurer, this is violation of L.M.R.D.A."

Further exhibits attached to the motion and briefs and affidavits in opposition to the motion, establish that the Secretary of Labor, through his delegates, contacted the union and its attorney, informing them of the charges to be brought, including both the two individual charges of Mr. Summers and each of the allegations contained in the present complaint. Following further conferences and correspondence between the parties, this action was commenced. The defendant contends that the charges brought in this action, which do not include the refusal to allow Mr. Summers to be a candidate or vote for Directors, are outside the scope of Mr. Summers' complaints to the union and Secretary, and the Court is therefore without jurisdiction to hear them.

Defendant relies upon two decisions of the Court of Appeals for the Second Circuit and a district court decision. In Wirtz v. Hotel, Motel and Club Employees Union, Local 6, 381 F.2d 500 (2nd Cir.1967) the Court found that the language of the statute (Title 29 U.S.C. § 482(a) and (b) (quoted supra) ) restricted the Secretary to the alleged violations actually contained in the member's complaint to the union and the Secretary. The Court rejected the argument that once the complaint was filed the Secretary had a right and duty to investigate any violations of the Act which might have affected the challenged election. To the same effect was the decision in Local Unions No. 545, 545–A, 545–B & 545–C Intern. Union of Operating Eng. v. Wirtz, 381 F.2d 448 (2nd Cir.1967) (per curiam) which relied upon Wirtz v. Hotel, Motel and Club Employees Union, *supra*. See also Wirtz v. Local Union No. 257, Glass Bottle Blowers Assn., 273 F.Supp. 746 (D. N. J.1967).

Since the date of these decisions, however, the Supreme Court has extensively considered the problems arising under the Act in Wirtz v. Local Union No. 125,

Laborers' Intern. Union, 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968). The complaint filed by the member alleged that certain ineligible voters were fraudulently allowed to vote in a run off election for business agent. The Court stated the issue to be, 389 U.S. 477, 480, 88 S.Ct. 639, 640, 19 L.Ed.2d 716, 719, "whether the District Court erred in holding that the Secretary in his suit may not challenge the alleged violations affecting the general election of June 8 because Dial specifically challenged only the runoff election of June 13 with respect to the office of Business Representative." The Court reversed the District Court, saying, at 389 U.S. 477, 481–482, 88 S.Ct. 639, 641, 19 L.Ed.2d 716, 720: "On the facts of this case we think the Secretary is entitled to maintain his action challenging the June 8 general election because respondent union had fair notice from the violation charged by Dial in his protest of the runoff election that the same unlawful conduct probably occurred at the earlier election as well. We therefore need not consider and intimate no view on the merits of the Secretary's argument that a member's protest triggers a § 402 enforcement an action in which the Secretary would be permitted to file suit challenging any violation of § 402 discovered in his investigation of the member's complaint." This decision was founded on the dual rationale that Congress had obviously intended to give reasonable play to the expertise and broad investigative powers conferred on the Secretary by the Act (389 U.S. 477, 483–484, 88 S.Ct. 639, 19 L.Ed.2d 716, 721) and that the reasons for requiring exhaustion of internal remedies would not be defeated by such an interpretation. The Court said in conclusion, at 389 U.S. 477, 484, 88 S.Ct. 639, 642–643, 19 L.Ed.2d 716, 722:

It is true that the exhaustion requirement was regarded by Congress as critical to the statute's objective of fostering union self-government. By channeling members through the internal appellate processes, Congress hoped to accustom members to utiliz-

ing the remedies made available within their own organization; at the same time, however, unions were expected to provide responsible and responsive procedures for investigating and redressing members' election grievances. These intertwined objectives are not disserved but furthered by permitting the Secretary to include in his complaint at least any § 401 violation he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint.

Considering the facts of this case, including the informal conferences held between the Secretary's delegates and the defendant's officers and attorneys, it appears that the defendant and the parent union, which is not a party, had a fair opportunity to consider the allegations of the complaint.

█ Mr. Summers did not specifically complain to the local officers concerning the method of electing the President, Vice-President and Secretary-Treasurer, or of the various criteria for running for office that did not directly affect him. His letter posted on the union bulletin board which was given to the President of the defendant, did challenge the election on the grounds that it violated the LMRDA of 1959. This allegation was included in the letter to the President of the parent union. Neither complaint prompted any investigation on the part of the defendant or the parent union. Mr. Summers's complaint to the Secretary of Labor challenged the election on the grounds that it violated the LMRDA of 1959 and specifically, that the President, Vice-President and Secretary-Treasurer were elected by the Board of Directors. It is submitted that each of these complaints were such that a reasonable investigation by the defendant and the parent union would have disclosed the charges in this complaint. Of course, it should be noted that each of the complaints involved here, other than the failure to keep records of the election, are addressed to the by laws of the defendant and that even after con-

ferences with the Department of Labor, the defendant refused to modify them to the extent requested. It is, therefore, held that the defendant's motion to dismiss cannot be granted on the third ground urged.

(4) The complaint fails to state a claim upon which relief can be granted because no complaint based upon the initial allegations of the complainant was filed within the time prescribed by the applicable statute as mutually extended.

This argument is designed to prevent the plaintiff from amending his complaint by asserting that Mr. Summers was illegally denied the right to vote or the right to be a candidate. The plaintiff apparently has no intention to attempt such an amendment and has not responded to this argument. It would appear well taken, but should not be ruled upon at this time.

The defendant has urged four grounds for dismissing the complaint; any one of the first three would be sufficient if well taken, First, it is urged that the complaint with the Secretary was not timely filed. It is concluded that the time for filing a complaint does not start to run until after the election is held. Second, it is argued that Mr. Christ Summers, who filed the complaint with the union and the Secretary, was not an eligible member within the meaning of the Act. It is concluded that the union's definition is not controlling over the statutory definition, and that Mr. Summers, who had fulfilled the requirements for membership and who had never been suspended or expelled, was a member of the union within the meaning of the Act. Third, it is argued that the complaint is defective in that it asserts alleged violations not included in the member's complaint to the union or the Secretary. It is concluded that the inartfully drawn letters submitted by Mr. Summers gave sufficient notice and opportunity to the union to redress the grievances and they were not outside the complaint filed with the Secretary. Fourth, it is concluded that it is unnec-

essary to rule on the propriety of an amendment to the complaint at this time.

It is, therefore, held that the motion to dismiss is not well taken and is denied.