James D. HODGSON, Secretary of Labor, Plaintiff-Appellant,

v.

INTERNATIONAL PRINTING PRESS-MEN AND ASSISTANTS' UNION OF NORTH AMERICA, AFL–CIO, Defendant-Appellee.

No. 20508.

United States Court of Appeals, Sixth Circuit.

March 9, 1971.

Donald L. Horowitz, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant; William D. Ruckelshaus, Asst. Atty. Gen., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., on brief.

John S. McLellan, Kingsport, Tenn., for defendant-appellee.

Before TOM C. CLARK, Associate Justice,* and EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

In 1959 the United States Congress adopted legislative standards of fairness in relation to elections in labor organizations and provided for enforcement of those standards by the United States District Courts through complaints initiated by the Secretary of Labor. *See* Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 481 et seq. (Supp. V, 1969).

This is a case of first impression at the appellate court level concerning the appropriate interpretation of Section 402(b) of the Act, 29 U.S.C. § 482(b) (1964):

"The Secretary shall investigate such complaint and, if he finds proba-

* Associate Justice, Supreme Court United States, Retired, sitting by designation.

ble cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States * * *."

The sole question in this appeal is whether the 60-day limit in the statute is absolute or may be waived by agreement between the Secretary of Labor and the union.

In this case complaints from three local unions of the Pressmen's union [1] were filed with the Secretary of Labor pertaining to a general election conducted by the International Union. The Secretary undertook investigation of the conduct of the election and initiated discussions for settlement of the complaints with the International Union officers. These proceedings occupied a considerable period of time and twice the general counsel for the union wrote the Secretary agreeing to extend the period of time for the Secretary's enforcement proceedings beyond the 60-day statutory limitation.

These conferences ultimately failed to resolve the complaints and approximately 120 days after the original complaint the Secretary brought suit to have the election set aside.

In keeping with its previous waivers, appellee union did not plead the limitation as a defense. But the District Judge before whom the action was brought entered an order dismissing the complaint sua sponte. He held that he was without jurisdiction to entertain the cause of action because of the limitation. He relied in part upon The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), wherein the Supreme Court said:

"The liability and the remedy are created by the same statutes, and the limitations of the remedy are therefore to be treated as limitations of the right." *The Harrisburg, supra* at 214, 7 S.Ct. at 147.

The District Judge also relied upon legislative history which indicated congressional concern for prompt action by the Secretary of Labor. In this same regard appellee union points out that the statutory language is mandatory and that the initial draft of the legislation originally contained a 30-day limitation, followed by the language "or as soon thereafter as possible," and that in the final version, the 60-day limitation was substituted without any similar additional language.

Appellant Hodgson, on the other hand, argues that the District Court decision, if affirmed by this court, will upset a long-standing interpretation of the Act under which waivers have been routinely accepted and given effect, that a statute of limitations is an affirmative defense which cannot be the subject of sua sponte action by the court when it is not pled by the defendant, and that in any event, the 60-day limitation in the statute should not be regarded as jurisdictional, since the logic of *The Harrisburg* case has been largely eroded or overruled by subsequent cases, such as Burnett v. New York Central R. R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

Appellant also points out that a number of courts have in effect refused to interpret the 60-day limitation as jurisdictional when the facts indicated that a defendant union had prevented the Secretary from acquiring the needed information to formulate a complaint. Wirtz v. Great Lakes Dist. Local No. 47, International Organization of Masters, Mates and Pilots, 240 F.Supp. 859 (N. D.Ohio 1965); Wirtz v. Local Union No. 705, Hotel and Restaurant Employees Union, 63 L.R.R.M. 2315 (E.D.Mich. 1966), vacated on other grounds, (unreported opinion), order to vacate rev'd, 389 F.2d 717 (6th Cir.), cert. denied 393

---

I. International Printing Pressmen and Assistants' Union of North America, AFL-CIO.

U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 102 (1968); Wirtz v. Independent Workers Union, 65 L.R.R.M. 2104 (M.D.Fla. 1967); Wirtz v. Local Union No. 1622, United Brotherhood of Carpenters, 285 F.Supp. 455 (N.D.Cal.1968).

We have stated the arguments of appellee and appellant in detail because we believe them to be in close balance and difficult to weigh. Our final analysis of the problem is that appellee union's voluntary waivers which were relied upon by appellant may be pled by appellant Secretary of Labor as an equitable defense to estop the otherwise mandatory bar of the statute. The reasoning by which we reach this result takes a little longer to state.

We start with the sentence above, which we have quoted from *The Harrisburg*:

"The liability and the remedy are created by the same statutes and the limitations of the remedy are therefore to be treated as limitations of the right." The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 147 (1886).

Of course, if this represented the final treatment of this issue in a situation where, as here, the statute did create the action and also stated a time limitation, we would have nothing more to do than affirm the carefully reasoned opinions of the District Judge who dismissed this complaint.

In two important cases, however, the Supreme Court has stated a different standard for ultimate determination as to whether or not the time limitation would be given automatic and inflexible effect. Burnett v. New York Central R. R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959).

In one of these cases, in discussing *The Harrisburg*,[2] the Supreme Court noted that *The Harrisburg* court had not ruled out equitable defenses, but on the contrary, had simply held that none were presented therein:

"No question arises in this case as to the power of a court of admiralty to allow an equitable excuse for delay in suing, because no excuse of any kind has been shown." The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 147 (1886).

And in both *Burnett* and *Glus* the Court held that the statute therein concerned could be tolled by an appropriate equitable defense when that defense accorded with the legislative purpose involved.

In *Glus* the Court said:

"To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations. In Schroeder v. Young, 161 U. S. 334, 16 S.Ct. 512, 40 L.Ed. 721, this Court allowed a debtor to redeem property sold to satisfy a judgment, after the statutory time for redemption had expired although the statute granting the right to redeem also limited that right as to time. The Court held that the purchasers could not rely on the limitation because one of them had told the debtor 'that he would not be pushed, that the statutory time to redeem would not be insisted upon, and [the debtor] believed and relied upon such assurance.' The Court pointed out that in 'such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration, upon the

---

2. Since this case was heard in the District Court, *The Harrisburg* has been squarely overruled, but on a legal issue other than that which concerns us here.

Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).

ground that the debtor was lulled into a false security.' 161 U.S., at 344, 16 S.Ct. at page 516." Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 232–233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959). (Footnotes omitted.)

In *Burnett* the Court said:

"The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable * * * after the prescribed time.' Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 360, 64 S.Ct. 128, 130, 88 L.Ed. 96. Classification of such a provision as 'substantive' rather than 'procedural' does not determine whether or under what circumstances the limitation period may be extended. As this Court has expressly held, the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years. Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770. See Osbourne v. United States, 164 F.2d 767 (C.A.2d Cir.); Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253 (C.A.4th Cir.); Frabutt v. New York C. & St. L. R. Co., 84 F.Supp. 460 (D. C.W.D.Pa.). These authorities indicate that the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.

"*In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act.*" Burnett v. New York Central R. R. Co., 380 U.S. 424, 427, 85 S.Ct. 1050, 1053 (1965). (Emphasis added.) (Footnotes omitted.)

One important Supreme Court case of fairly recent origin has held that voluntarily executed waivers did not toll the statute of limitations dealt with therein. Midstate Horticultural Co., Inc. v. Penn-

sylvania Ry. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96 (1943). However, as the Supreme Court noted in the *Burnett* quotation above, this decision was based entirely upon the Court's interpretation of the legislative intent which underlay the statutory limitation there involved.

This then takes us to the difficult problem of seeking to ascertain legislative intent in the context of the facts of this case in Congress' enactment of the "within 60-day" time limitation.

In our consideration of the legislative history of this statute, we start with those relatively few sentences which have been preserved wherein the time limitation upon the Secretary of Labor's filing an election complaint was discussed. Of some significance, no doubt, is the fact that the original version of the proposed legislation in 1958 contained a 30-day period within which the Secretary of Labor would have to file a complaint. Subsequent thereto Senator Smith proposed first that the 30-day limitation be amended by adding the words "or as soon thereafter as possible," and subsequently that the phrase be added "but in no event after 60 days." Senator John F. Kennedy accepted these proposals, the Senate adopted a bill containing them, but the House failed to pass the bill.

The following year when Senator Kennedy introduced his bill, the language had been changed to the present statutory form "within 60 days." The record contains no explanation of the change.

Only two things seem clear to us from this review of what was and was not said pertaining to the time limitation. The first is the fact that obviously Congress was concerned that the Secretary of Labor move promptly to investigate election complaints and where probable cause was found, to file legal action in the Federal District Courts. The second is that the record is completely devoid of any indication that Congress ever considered when, if at all, the 60-day limitation would be subject to being tolled by equitable defenses. It may, however, be significant that the more emphatic lan-

guage "but in no event after 60 days" was not adopted.

We turn then to note the general purposes of this legislation, as found on the face of the statute and in the legislative history. The legislation patently sprang from congressional concern for protecting the right of union members to democratic procedures within their labor organizations. The Congress found that under some circumstances protection of these rights required the intervention of the Secretary of Labor and fact-finding and equitable relief by the Federal District Courts.

There were, however, repeated expressions of a countervailing desire to allow unions to put their own houses in order whenever they could and would do so. In discussing the bill, its principal sponsor, Senator Kennedy said, "The important thing is to get the democratic procedure and then to let the union run its own internal affairs in keeping with that democratic procedure, with the policing surveillance which the Kennedy bill, with respect to this matter and other matters, gave to the Secretary of Labor."

A careful review of the legislative history leaves us unable to find any specific consideration by Congress of waiver of the 60-day time limit—the procedure here defended by the Secretary of Labor as being in the interest of quicker and less abrasive settlements of election disputes. It is clear, however, that from the effective date of the Act, July 1, 1962, down to date, the administrative interpretation of the time limitation has included heavy reliance upon negotiation with the union which was the subject of an election complaint and the subsequent voluntary compliance by the union with corrective measures suggested by the Secretary of Labor to insure the democratic election procedures which this statute was designed to protect.

An affidavit filed by the Secretary, the truth of which is not disputed, states that between July 1, 1962, and June 30, 1969, the Secretary conducted 329 Title IV investigations wherein actionable violations were disclosed and that 53% of these disputes were resolved without litigation. It appears that waivers have been routinely tendered by the unions concerned and relied upon by the Secretary in two situations: 1) where the investigation was not complete and the union hoped to avoid the stigma of an official complaint, and 2) where the union was prepared to agree to a remedy but the action required could not be performed within 60 days. It is, of course, obvious that automatic application of the time limitation in these instances would run directly contrary to the expressed desires of Congress for unions to be given opportunity to perfect their own election procedures.

While not conclusive, considerable weight must, of course, be given to the administrative construction of a statute —particularly where, as here, it was contemporaneously applied without subsequent congressional criticism or amendment. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

In the *Udall* case the Supreme Court said:

"When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. 'To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.' Unemployment Comm'n of Territory of Alaska v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136. See also, e. g., Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Universal Battery Co. v. United States, 281 U.S. 580, 583, 50 S.Ct. 422, 74 L.Ed. 1051. 'Particularly is this

respect due when the administrative practice at stake "involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." ' Power Reactor Development Co. v. International Union of Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924." Udall v. Tallman, *supra* 380 U.S. at 16, 85 S. Ct. at 801.

Although there are no appellate court decisions directly in point on the question of automatic extinguishment of the Secretary's right to bring this type of complaint after 60 days, there are a number of District Court cases which have dealt with the problem. Aside from the District Court's decision in the instant case, all except one have supported appellant Secretary of Labor's contentions. Schultz [sic] v. Local 1470, Int'l Brotherhood of Electrical Workers, (D.N.J.Civ. No. 44–69, April 28, 1969); Wirtz v. National Maritime Union, 284 F.Supp. 47, 57 (S.D.N.Y.1968), aff'd, 399 F.2d 544 (2d Cir. 1968); Wirtz v. Local 545, Int'l Union of Operating Engineers, 64 L.R.R.M. 2449, 2456 (N.D. N.Y.1966), aff'd, 381 F.2d 448 (2d Cir. 167). *See also* Wirtz v. Independent Petroleum Workers, 307 F.Supp. 462, 465 (N.D.Ind.1969); Shultz v. Local 1299, United Steelworkers, 324 F.Supp. 750 (E.D.Mich.1970); Shultz v. Local 6799, United Steelworkers, 71 L.R.R. M. 2820 (C.D.Cal.1969); Wirtz v. Local 1377, Int'l Brotherhood of Electrical Workers, 63 L.R.R.M. 2029 (N.D. Ohio 1966); Wirtz v. Local No. 57, etc., Int'l Union of Operative Engineers, 293 F.Supp. 89 (D.R.I.1968); Wirtz v. H. H. Guy Lodge, No. 872, Brotherhood of Railroad Trainmen, 279 F.Supp. 873 (W.D.Pa.1967). *Contra,* Shultz v. Local 851, Int'l Machinists and Aerospace Workers (No. 70 C 1579, Oct. 29, 1970).

It is true that in these cases, for the most part, the judges concerned simply assumed the existence of jurisdiction.

But it is of some possible significance that no judge or litigant had ever seen fit to object to the waiver procedure until this case was dismissed in the District Court.

Although it really concerns a construction of federal rules, a Fourth Circuit decision in Wirtz v. Peninsula Shipbuilders Ass'n, 382 F.2d 237 (4th Cir. 1967), has some arguable bearing upon our problem. Basically the case held that where the 60th day available to the Secretary fell on Sunday, under a federal rule (Fed.R.Civ.P. 6(a)) filing on the 61st day, a Monday, was in compliance with the statute. While this suggests that the application of the time bar should not be quite as automatic as the appellee argues herein, Judge Soboloff's reasoning is perhaps even more relevant:

"In fact, section 402(b) is not even couched in the usual language of a statute of repose; rather, it is a directive to the Secretary which, under certain circumstances, he must follow." Wirtz v. Peninsula Shipbuilders Ass'n, 382 F.2d 237, 240 (4th Cir. 1967).

Finally, we turn to the other cases previously cited wherein tolling of the statute has been upheld because of conduct on the part of the union which impeded or delayed the Secretary's investigation. Wirtz v. Great Lakes Dist. Local No. 47, International Organization of Masters, Mates and Pilots, 240 F. Supp. 859 (N.D.Ohio 1965); Wirtz v. Local Union No. 705, Hotel and Restaurant Employees Union, 63 L.R.R.M. 2315 (E.D.Mich.1966), vacated on other grounds, (unreported opinion), order to vacate rev'd, 389 F.2d 717 (6th Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 102 (1968); Wirtz v. Independent Workers Union, 65 L.R.R.M. 2104 (M.D.Fla.1967); Wirtz v. Local Union No. 1622, United Brotherhood of Carpenters, 285 F.Supp. 455 (N.D.Cal. 1968).

As to these cases the District Judge conceded that tolling of the statute was

appropriate. We find ourselves in full agreement with this conclusion. To allow delay or deliberate concealment of election records to make it impossible for the Secretary to resolve a complaint to the point of finding (or not finding) probable cause, would offer a tempting method of defeating the basic purpose of Title IV. If, however, such an equitable consideration can toll the time limit with which we are here concerned, we find no logic which excludes giving a similar tolling effect to the equitable defense of waiver.

It is, we believe, a mistake to discuss the question of tolling a statute of limitations in terms of whether jurisdiction exists after a time limitation has passed. Where a statute (as here) gives jurisdiction to the United States District Courts over a certain type of complaint and sets a time limit for filing, the tolling of that time limit automatically extends the jurisdiction of the court. The basic question is whether in view of the congressional purpose any equitable considerations should be allowed to toll the limitation. For the reasons previously detailed, we believe that the congressional intent and purpose in enactment of Title IV is best served by holding that the waiver of the 60-day time limit and the reliance thereon tolled the time limitation and acted to estop its assertion by appellee. Burnett v. New York Central R. R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); *See also* Dawson, Estoppel and Statutes of Limitation, 34 Mich.L.Rev. 1 (1935).

We believe this view accords with modern interpretations of statutes of limitations. Perhaps even more important, we believe this view accords with the intent of Congress, since the 60-day time limitation which was waived by appellee was principally intended by Congress as a protection for the very party which executed the waivers.

The District Court had and has jurisdiction to hear and decide this complaint.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.