486 F.2d 6
 84 L.R.R.M. (BNA) 3014, 72 Lab.Cas. P 14,058
 Peter J. BRENNAN, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
LOCAL 551, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA, INC., Defendant-Appellee.
 No. 73-1707.
 United States Court of Appeals
Seventh Circuit.
 Decided Aug. 13, 1973.
 
 Beate Bloche, U. S. Dept. of Labor, Washington, D. C., Herman Grant, James R. Thompson, U. S. Atty., William T. Huyck and James K. Toohey, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellant.
 Irving M. Friedman, Chicago, Ill., for defendant-appellee.
 Before PELL, STEVENS, and SPRECHER, Circuit Judges.
 MEMORANDUM ORDER*
 STEVENS, Circuit Judge.
 
 
 1
 This matter is before the Court on defendant-appellee's Motion to Amend this Court's order of August 3, 1973, and plaintiff's motion for order directing defendant-appellee to prepare and mail notices of new election. In our order of August 3, 1973, we denied the plaintiff-appellant's Motion for Summary Reversal of the district court's order which had been entered August 2, 1973 and which denied plaintiff's motion to postpone the Union election from August 7, 1973, to August 22, 1973. The denial was based on the grounds (1) that we did not have the benefit of a response from defendant-appellee and the exigencies of the situation required prompt disposition, and (2) since it was evident that the Secretary had a reasonable basis for postponing the election, an election held on August 7 without his approval would not comply with the order of June 18, 1973 directing an election "under the supervision of the Secretary" at the earliest practicable date, and therefore the conduct of the election on August 7 without the approval of the Secretary would merely be a useless act without adverse consequences except to the Union's treasury.
 
 
 2
 We now have the benefit of the defendant's argument and the transcript of the oral opinion of the district court; further reflection has persuaded us that the district court's order of August 3, 1973, should have been reversed. We now vacate that order and direct that a new order be entered setting the election on the earliest practicable date acceptable to the Secretary.
 
 
 3
 We are convinced that this action is necessary because papers filed by defendant-appellee reveal misconceptions that must not be permitted to frustrate the purpose of this litigation and its further processing in an orderly fashion.
 
 
 4
 First: The Secretary's power to supervise an election required by a court order clearly includes the power to set the date of that election. That date should not be fixed until after the Secretary has consulted with interested parties, including the incumbent leadership of the Union, but such consultation is not in any sense comparable to a negotiation between equal parties. The decision which the Secretary makes is his decision; it must not be arbitrary or capricious, but it is not equivalent to a negotiated consent decree. The Secretary's determination of an election date is subject to revision at any time if he has reasonable grounds for concluding that a different date is necessary to ensure a fair and representative election. He should consider the various factors, such as expense, possible impact on impending negotiations, or any other matters that he, in his impartial expertise, deems relevant. But the weight to be accorded such factors is, in the first instance, for him to decide.
 
 
 5
 Second: If the Union, or its incumbent leadership, or any other interested party, wishes to object to any action taken by the Secretary in his supervisory capacity, that party assumes a heavy burden of persuasion and proof. If there is procedural irregularity (such as a complete lack of any opportunity to object or to explain), evidence of bias, or if the Secretary's action is manifestly arbitrary, such an interested party may be able to demonstrate that judicial intervention in advance of the election is necessary. Otherwise, generally speaking, the Secretary's decisions taken in his supervisory capacity must be heeded. If a dispute arises over the election date, the burden-and in our opinion it is a heavy one-is on the objector, not the Secretary.
 
 
 6
 Third: In this case the decision of the Secretary to postpone the election was not arbitrary or unreasonable. His action must, of course, he judged on the basis of the facts available to him when his decision was made. Defendant's proffer of evidence relating to the actual turnout at the unsupervised election on August 7 is completely irrelevant. Even if we assume arguendo that the Secretary's decision was erroneous or unwise; it was nevertheless a decision which he had the power to make and which the law requires affected parties to respect. The Secretary's representation-that when he originally set August 7 as the election date he had not known the plant would be shut down at that time-is not questioned. We have no doubt that the Secretary could reasonably fear that an election held when a substantial number of employees would probably be on vacation would not be representative. This conclusion is unaffected by the defendant's representations as to the actual turnout. For an election conducted in defiance of the Secretary's command is itself affected by an extraneous factor that the statute does not contemplate.
 
 
 7
 The decision of the district court as explained in his oral opinion erroneously rested on the assumption that the Secretary had the burden of proving irreparable injury and establishing the kind of extraordinary facts that would justify a modification of a consent decree. Moreover, the district court seemed to assume that the general policy of avoiding judicial interference in internal Union affairs was applicable. In our opinion, however, the stipulation that a new election be conducted "under the supervision of the plaintiff, as provided in Section 402(c) of the Act" gave him the same remedial authority as if the violations alleged in his complaint had been established by proof. Since the Secretary's intervention was properly invoked in this case, the following comments by the Supreme Court in Wirtz v. Bottle Blowers Assn., 389 U.S. 463, 472-475, 88 S.Ct. 643, 649, 19 L. Ed.2d 705 are pertinent: (The emphasis and footnotes are the Supreme Court's.)
 
 
 8
 "Congress has explicitly told us that these provisions were designed to preserve a 'maximum amount of independence and self-government by giving every international union the opportunity to correct improper local elections.' S.Rep. No. 187, 86th Cong., 1st Sess., 21, I Leg.Hist. 417.
 
 
 9
 "But it is incorrect to read these provisions circumscribing the time and basis for the Secretary's intervention as somehow conditioning his right to relief once that intervention has been properly invoked. Such a construction would ignore the fact that Congress, although committed to minimal intervention, was obviously equally committed to making that intervention, once warranted, effective in carrying out the basic aim of Title IV.[11] Congress deliberately gave exclusive enforcement authority to the Secretary, having "decided to utilize the special knowledge and discretion of the Secretary of Labor in order best serve the public interest." Calhoon v. harvey, supra. In so doing, Congress rejected other proposals, among them plans that would have authorized suits by complaining members in their own rights. And Congrees unequivocally declared that once the Secretary established in court that a violation of Sec. 401 may have affected the outcome of the challenged election, 'the court shall declare the election . . . to be void and direct the conduct of a new election under supervision of the Secretary . . . .' 29 U.S.C. Sec. 482(c). (Emphasis supplied.)
 
 
 10
 "We cannot agree that this statutory scheme is satisfied by the happenstance intervention of an unsupervised election. The notion that the unlawfulness infecting the challenged election should be considered as washed away by the following election disregards Congress' evident conclusion that only a supervised election could offer assurance that the officers who achieved office as beneficiaries of violations of the Act would not by some means perpetuate their unlawful control in the succeeding election. That conclusion was reached in light of the abuses surfaced by the extensive congressional inquiry showing how incumbents' use of their inherent advantage over potential rank and file challengers established and perpetuated dynastic control of some unions. See S.Rep.No. 1417, 85th Cong., 2d Sess. These abuses were among the "number of instances of breach of trust . . . [and] disregard of the rights of individual employees . . ." upon which Congress rested its decision that the legislation was required in the public interest.[13] Congress chose the alternative of a supervised election as the remedy for a Sec. 401 violation in the belief that the protective presence of a neutral Secretary of Labor would best prevent the unfairness in the first election from infecting, directly or indirectly, the remedial election. The choice also reflects a conclusion that union members made aware of unlawful practices could not adequately protect their own interests through an unsupervised election. It is clear, therefore, that the intervention of an election in which the outcome might be as much a product of unlawful circumstances as the challenged election cannot bring the Secretary's action to a halt. Aborting the exclusive statutory remedy would immunize a proved violation from further attack and leave unvindicated the interests protected by Sec. 401. Title IV was not intended to be so readily frustrated.
 
 
 11
 "Respondent argues that granting the Secretary relief after a supervening election would terminate the new officers' tenure prematurely on mere suspicion. But Congress, when it settled on the remedy of a supervised election, considered the risk of incumbents' influence to be substantial, not a mere suspicion. The only assurance that the new officers do in fact hold office by reason of a truly fair and a democratic vote is to do what the Act requires, rerun the election under the Secretary's supervision."
 
 
 12
 The order of June 18, 1973, specified a remedy which necessarily involves governmental intervention and supervision of a critical aspect of the Union's activities, namely its election process. In order to achieve the purpose of the statute, the Secretary must be afforded a wide range of discretion in discharging his supervisory responsibility. The leadership of the Union must respect his authority.
 
 
 13
 The district court order of August 2, 1973, is vacated and the case is remanded to the district court with directions to enter an order directing that the election be held at the earliest practicable date to be determined by the Secretary. Said order shall require the defendant Union to prepare and mail notices under the supervision of the Secretary and to comply with all reasonable directives of the Secretary.
 
 
 
 *
 This ruling was originally issued as an "Order" pursuant to Circuit Rule 28. At the request of the Secretary, on September 19, 1973, we authorized publication as an "Opinion" within the meaning of that rule
 
 
 [11]
 See, e. g., S.Rep.No.187, supra, n. 7, at 34, I Leg.Hist. 430: "The committee bill places heavy reliance upon reporting and disclosure to union members, the Government and the public to effect correction of abuses where they have occurred. However, the bill also endows the Secretary of Labor with broad power to insure effectuation of its objectives
 ". . . He has power to- . . . (e) investigate violations of the election provisions and bring court actions to overturn improperly held elections and supervise conduct of new elections . . .
 "The committee believes that the broad powers granted to the Secretary by this bill combined with full reporting and disclosure to Union members and the public provides a most effective combination of devices by which abuses can be remedied." (Emphasis supplied.)
 
 
 [12]
 S. 748, 86th Cong., 1st Sess., I Leg.Hist. 84, 118-134; H.R. 8342, 86th Cong., 1st Sess., I Leg.Hist. 687, 727-729. See H.R. Conf.Rep.No.1140, 86th Cong., 1st Sess., 35, I Leg.939
 
 
 [13]
 See supra, at 647