876 F.2d 648
 131 L.R.R.M. (BNA) 2529, 58 USLW 2027,
112 Lab.Cas. P 11,214
 Ann McLAUGHLIN, Secretary of Labor, United States Department
of Labor, Appellant,
v.
LODGE 647, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON
SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS,
AFL-CIO, Appellee.
 Nos. 88-5085, 88-5086.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1988.
Decided June 1, 1989.
Rehearing and Rehearing En Banc Denied Oct. 6, 1989.
 
 Susan M. Webman, Washington, D.C., for appellant.
 Stephen D. Gordon, Minneapolis, Minn., for appellee.
 Before HEANEY,* and FAGG, Circuit Judges, and REASONER,** District Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 We are presented with two issues in this case: First, whether the district court is obligated to order a rerun union election supervised by the Secretary of Labor if it finds a violation of the Labor Management Reporting and Disclosure Act (LMRDA); and second, if not, what standard of review we apply to a decision not to order a new election. We believe that a district court has the equitable discretion to refuse to order a rerun election under certain narrow circumstances. Because the record supports the district court's decision not to order a rerun election in this case, we affirm.
 
 BACKGROUND
 
 2
 The Secretary of Labor filed suit against Lodge 647 in September of 1984, alleging that it violated Title IV of LMRDA, 29 U.S.C. Secs. 481-483, during the 1984 election. The Secretary sought an order invalidating this election and directing the union to conduct a new election under the Secretary's supervision. It contended that the Lodge violated the LMRDA by imposing unreasonable candidacy qualifications on members, by failing to uniformly enforce these qualifications, by failing to distribute campaign literature of a slate of candidates in a timely manner, and by discriminating in favor of some candidates with respect to the use of lists of the Lodge's members.
 
 
 3
 In 1987, while this suit was pending, the Lodge proceeded with its next regularly scheduled election. After the Secretary refused an offer from the union to observe this election and to supervise the distribution of campaign literature, the union hired a neutral labor relations consultant, a former Department of Labor administrator, to provide advice prior to and during the election and to observe the actual election process. In addition, the union eliminated the meeting-attendance eligibility rule being challenged by the Secretary as unreasonable, it provided all nominees with written notice of the mailing date for official ballots, and it honored all requests to mail campaign literature before it mailed the official ballots.
 
 
 4
 The district granted summary judgment in favor of the Lodge, holding that although the Lodge had violated the LMRDA in 1984, a new election supervised by the Secretary was unnecessary because the 1987 election had remedied the earlier violations.
 
 DISCUSSION
 
 5
 On appeal, the Secretary argues that the district court erred in finding that the 1987 election rendered moot its request for a new election. It also asserts that under section 402(c) of the LMRDA, 29 U.S.C. Sec. 482(c), the district court is statutorily required to order a new election if it finds a violation of the LMRDA regardless of whether a union has held an untainted intervening election. It alleges that the authority to determine the need for a new election is vested in the Secretary, that the decision to order a rerun election is only reviewable by the district court under the "arbitrary and capricious" standard of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A), and that the court violated the remedial provisions of the LMRDA by failing to order the remedy sought by the Secretary. Basically, the Secretary asks us to strictly interpret the LMDRA and to hold that when a court finds a violation the statute, and finds that this violation may have affected the outcome of an election, the court must order a rerun supervised election and may not make an independent determination of the necessity of that remedy. While we agree that an untainted intervening election does not destroy the Secretary's right to seek a supervised rerun election, we disagree with the Secretary's inflexible construction of the LMRDA.
 
 I. Mootness
 
 6
 The Secretary argues that the district court erred by "declaring moot" the need for a supervised rerun election. The Secretary is correct in arguing that the case cannot be dismissed as moot. Under Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), an intervening union election does not moot the Secretary's challenge to an election. Thus, the district court's use of the term "moot" was inappropriate. A close reading of the district court opinion, however, indicates that the court did not dismiss for lack of jurisdiction, but rather held that the section 401 violations in 1984 had been fully remedied in 1987, making a rerun supervised election unnecessary. This case does not present a mootness issue and Glass Bottle Blowers does not apply here. Rather, at issue is whether, under section 402(c), a district court has the authority to deny the Secretary its requested remedy--a supervised rerun election--when the court has found a LMRDA violation.
 
 II. Section 402(c)
 A. Statutory Language
 
 7
 Section 402 of the LMRDA authorizes the Secretary of Labor to file suit in federal court when a union member lodges a complaint and the Secretary, after an investigation, has probable cause to believe that a union election was not conducted in compliance with the standards prescribed in section 401 of the act, 29 U.S.C. Sec. 481. If the court finds that a violation of section 401 occurred which "may have affected the outcome of an election," the court "shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary." 29 U.S.C. Sec. 482(c) (emphasis added).
 
 
 8
 The Secretary argues that this provision is set forth in mandatory terms, obligating the court to order a new election. A few courts have followed this approach. See Usery v. Dist. 22, United Mine Workers of America, 543 F.2d 744, 750 (10th Cir.1976); Hodgson v. Local Union 400, Bakery & Confectionery W.I.U., 491 F.2d 1348, 1353 (9th Cir.1974); Usery v. Sheet Metal Workers, Local 20, 105 L.R.R.M. 3203, 3205 (D.N.J.1980); Wirtz v. Local Union No. 1622, etc., 285 F.Supp. 455, 465 (N.D.Cal.1968).
 
 
 9
 Yet, the Supreme Court in Glass Bottle Blowers Ass'n, refused to read this statutory provision literally. It wrote:
 
 
 10
 [N]o exceptions are admitted by the unambiguous wording that when "the violation of Sec. 401 may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary * * *."
 
 
 11
 Nonetheless, this does not end the inquiry. We have cautioned against a literal reading of congressional labor legislation; such legislation is often the product of conflict and compromise between strongly held and opposed views, and its proper construction frequently requires consideration of its wording against the background of its legislative history and in the light of the general objectives Congress sought to achieve. * * * The LMRDA is no exception.
 
 
 12
 389 U.S. at 468, 88 S.Ct. at 646 (citations and footnote omitted, emphasis in original).
 
 
 13
 See also Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 852 (1960) ("[C]ourts would be well advised to seek out the underlying rationale without placing great emphasis upon close construction of the words."). Thus, we will not rest a decision of whether the district court has the discretion to fashion the appropriate remedy under section 402(c) on the basis of the statutory language alone.
 
 B. Legislative History and Statutory Scheme
 
 14
 As directed by the Supreme Court in Glass Bottle Blowers Ass'n, our construction of section 402(c) requires consideration of the statute's legislative history and the general objectives of Congress.
 
 
 15
 We have not found and the Secretary has not shown us anything in the legislative history which explicitly prohibits the courts from examining a proposed remedy and evaluating its appropriateness in Title IV cases. A reading of the legislative history of the LMRDA indicates that Congress sought to remedy widespread electoral abuses occurring within unions in the 1950's. S.Rep. No. 187, 86th Cong., 1st Sess., reprinted in 1959 U.S.Code Cong. & Admin.News 2318. The legislation was originally "conceived as a vehicle for the elimination of racket influences in the organized labor movement, * * * the undemocratic perpetuation in office of self-serving union officers, [and] the use of coercive and perverted union practices for personal gain." H.R.Rep. No. 741 (Supplementary Views), 86th Cong., 1st Sess., 1959 U.S.Code Cong. & Admin.News at 2424, 2481. To remedy these abuses, Congress established a set of election standards and "empower[ed] Federal courts to direct new elections to be conducted under the supervision of the Secretary where it [found that a] union election was improperly conducted." S.Rep. No. 187, 1959 U.S.Code Cong. & Admin.News at 2320; H.R.Rep. No. 741, 1959 U.S.Code Cong. & Admin.News at 2426. Thus, Congress gave the federal courts, and not the Secretary of Labor, the power to impose a new election on union officials.
 
 
 16
 Furthermore, it appears that Congress wished to give the courts some discretion with regard to ordering a new election. The Senate committee that crafted the remedial portion to Title IV rejected "the notion of applying destructive sanctions to a union, i.e., to a group of working men and women, for an offense for which the officers are responsible and over which the members have, at best, only indirect control. Still more important, the legislation should provide an administrative or judicial remedy for each specific problem." S.Rep. No. 187, 1959 U.S.Code Cong. & Admin News at 2323. See also Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 851, 905 (1960) (appropriate judicial remedies may include setting aside an invalid election, directing a new election, or directing a vote on the removal of officers).
 
 
 17
 Title IV's function in furthering the overall goals of the LMRDA is to promote free and democratic union elections. S.Rep. No. 187, 1959 U.S.Code Cong. & Admin.News at 2336. As the Supreme Court stated in Wirtz:
 
 
 18
 The legislative history shows that Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs. The extensive and vigorous debate over Title IV manifested a conflict over the extent to which governmental intervention in this most crucial aspect of internal union affairs was necessary or desirable. In the end there emerged a "general congressional policy to allow unions great latitude in resolving their own internal controversies, and where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts."
 
 
 19
 389 U.S. at 470-71, 88 S.Ct. at 647-48, citing Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964) (footnote omitted).
 
 
 20
 Only after the complaining union member exhausts his internal remedies, and settlement discussions between the union and the Department of Labor break down may the Secretary sue for a new election. The adoption of an administrative-judicial mechanism for enforcing Title IV rights arose from the need to balance two sets of competing interests: first, the conflict between effective governmental intervention and comprehensive self-governance; and second, the conflict between the individual interests of the union members and the public interest in honest but effective unionism. Note, Union Elections and the LMRDA: Thirteen Years of Use and Abuse, 81 Yale L.J. 407, 473 (1972).
 
 
 21
 Allowing a district court to make an independent evaluation of the need for the remedy proposed by the Secretary does not disturb the balance struck by Congress. First, it prevents the Secretary from infringing the union's right to self-government when an intrusion is unwarranted. Second, it allows the court to fashion a remedy to fit the needs of affected union members in each case. Finally, by recognizing a union's ability to remedy its own mistakes, the court furthers the larger public interest in union democracy. We recognize that the Secretary has been given the role of protectorate of the public interest. But, by requiring the Secretary to plead its case in the courts, Congress has inherently bestowed district courts with the power, albeit equitable, to balance the union's desire for self-government and the need for governmental intrusion.C. Case Law
 
 
 22
 Several circuit courts that have dealt with the legal issue presented in this case have found that proceedings brought by the Secretary under section 402 of the LMRDA are equitable proceedings and are governed by equitable principles. Donovan v. Local 6, Washington Teachers' Union, 747 F.2d 711, 716 n. 2 (D.C.Cir.1984); Marshall v. Local 1010, United Steelworkers, etc., 664 F.2d 144, 149 (7th Cir.1981); Usery v. Int'l Org. of Masters, Mates, and Pilots, 538 F.2d 946, 950 (2d Cir.1976). As the Seventh Circuit noted, the essence of equity jurisdiction has been the power of the courts to mold the remedy to fit the necessities of each case. Marshall, 664 F.2d at 149. Based on this equitable authority, the Second, Seventh, and D.C. Circuits have determined that a trial judge retains limited discretion in enforcing the election provisions of the LMRDA and that the court may fashion a remedy to fit the practicalities of a particular situation. Donovan, 747 F.2d at 716 n. 2; Marshall, 664 F.2d at 149; Usery, 538 F.2d at 950. This holding is consistent with the Supreme Court's statement in Trbovich v. United Mine Workers, 404 U.S. 528, 537 n. 8, 92 S.Ct. 630, 636 n. 8, 30 L.Ed.2d 686 (1972) that the court is not limited to a consideration of remedies proposed by the Secretary, but may fashion a suitable remedial order with the assistance of intervenors.
 
 
 23
 While the Secretary concedes the equitable nature of this proceeding, and concedes that an untainted intervening election may remedy previous section 401 violations, she argues that it is the Secretary's right to determine whether a supervised rerun election is necessary. She asserts that the district court may review the agency's decision under the "arbitrary and capricious" standard of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A), but may not make an independent decision as to the necessity of an election.
 
 
 24
 Although the practical differences between our approach and that suggested by the Secretary may not be great, we do not believe that the APA applies to the decision of the Secretary to seek a supervised election from a federal court. The APA only applies to "[a]gency actions made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. Sec. 704. The decision to file this suit is not a "final agency action" contemplated in section 704 because the district court stands ready to dismiss the suit if it has no factual basis. Congress gave the Secretary the right to ask a court to order a supervised election. The power to order the union to perform a rerun election was given to the federal courts. Thus, at this stage of the proceedings, there is no final "agency action, finding or conclusion" within the meaning of 5 U.S.C. Sec. 706 for the district court to review.
 
 
 25
 The cases cited by the Secretary to support the "arbitrary and capricious" standard of review are inapplicable to this case, as each of those cases involved a final agency decision. See Dunlop v. Bachowski, 421 U.S. 560, 572-73, 95 S.Ct. 1851, 1860, 44 L.Ed.2d 377 (1975) (challenge by union member to Secretary's decision not to file a section 401 lawsuit in federal district court); Usery v. Local 639, Int'l Brotherhood of Teamsters, 543 F.2d 369, 377-78 (D.C.Cir.1976), cert. denied sub nom. Teamsters v. Marshall, 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977) (challenge to Secretary's certification of supervised election); Brennan v. Local 551, United Automobile, Aerospace and Agricultural Imp. Wkrs. of America, 486 F.2d 6, 7-8 (7th Cir.1973) (challenge to Secretary's decision to set date of supervised election). None of these cases involved a challenge to the Secretary's determination that only a supervised election would remedy the LMRDA violations. As the decision to order an election rests solely in the hands of the federal district court, we believe the court also possesses the equitable authority to accept or reject the Secretary's proposed remedy in Title IV cases and to make an independent decision as to whether that remedy is needed under the circumstances of each case.
 
 
 26
 The Secretary argues that if the district court retains some discretionary power under section 402(c), that discretion is limited. We agree. When determining whether an untainted intervening election adequately remedied the LMRDA violations of a previous election, the district court should give great weight to a request from the Secretary for a supervised election, must ensure that the goals of the statute are protected, and should consider the "practicalities" of each situation. A determination that a supervised election is unnecessary must be supported by the facts in the case. See Marshall v. Local 1010, United Steelworkers, etc., 664 F.2d 144, 152 (7th Cir.1981), (new election unwarranted when incumbent union faction lost election after intentionally destroying ballots); Brock v. Local Lodge 107, Int'l Brotherhood of Boilermakers, No. 84-C-1127 (E.D.Wis. Aug. 9, 1985) (unpublished opinion) (rerun election unnecessary when a union member allegedly prevented from running for office in the first election subsequently won the seat in an intervening unsupervised election).
 
 III. Standard of Review
 
 27
 This case comes to us on summary judgment. We think it necessary to note that only in rare cases is summary judgment appropriate for determining that the statutory remedy of section 402(c) should be withheld. Marshall, 664 F.2d at 151. Thus on appeal, we must determine whether the uncontested facts of the case support the district court's use of its remedial discretion and whether the decision of the court is consistent with the statutory scheme of the LMRDA. Id.
 
 
 28
 It is undisputed that the meeting-attendance bylaw, which unreasonably restricted union members from seeking nomination in 1984, has been repealed and was not effective during the 1987 election. It is also undisputed that after asking the Secretary to supervise the distribution of campaign literature and to observe the election in 1987, which it refused to do, the union hired a former Department of Labor administrator to provide advice, to observe the election and to receive any complaints from union members during the electoral process. The consultant attested that the 1987 election was absolutely fair and untainted. While the Secretary alleges she would have run the election differently, she admits that the department has received no complaints with regard to the nomination process or the election itself.
 
 
 29
 The Secretary was obviously disturbed by the fact that the incumbent president, vice president, recording secretary, and inspector ran unopposed in 1987. The Secretary, citing to Usery v. Stove, Furnace & Allied Appliance Wkrs., etc., 547 F.2d 1043, 1048 (8th Cir.1977), argues that the district court should have assumed "that no opposition candidates were offered * * * because union members felt it would be futile to do so." In Usery v. Stove, Furnace, we were faced with the issue of whether the district court erred in finding that the section 401 violations "may have affected" the outcome of an election. The Secretary of Labor showed that five people had been elected without opposition and that the retiring president had recommended these people for the open seats in a written report. The district court found that this report may have affected the outcome of the election because it may have discouraged some delegates from nominating their own personal choices for office. Id. at 1048. Because there was evidence to support this finding in the record, we affirmed the district court's decision to rerun the election for these offices.
 
 
 30
 In this case, however, there is no evidence that any person withheld nominations in 1987 because of feelings of futility or frustration. The re-election of incumbent officers could just as likely be a "signal only that members are satisfied with their stewardship." Steelworkers v. Usery, 429 U.S. 305, 311, 97 S.Ct. 611, 615, 50 L.Ed.2d 502 (1977). In fact, two of the union members who challenged the incumbents and lost in 1984 were nominated for office in 1987 but declined the nomination. The LMRDA was not intended to force union members to attend meetings or to seek office. As the Supreme Court has stated:
 
 
 31
 Congress did not saddle the courts with the duty to search out and remove improperly entrenched union leaderships. Rather, Congress chose to guarantee union democracy by regulating not the results of a union's electoral procedure, but the procedure itself. Congress decided that if the elections are "free and democratic," the members themselves are able to correct abuse of power by entrenched leadership.
 
 
 32
 Id. at 311-12, 97 S.Ct. at 616.
 
 
 33
 Thus, the district court's duty is not to remove incumbents who run unopposed and who are elected year after year. It must only guarantee that the standards promulgated in the LMRDA are followed. The rest is up to the union members themselves. If there is no evidence of union member frustration over incumbency, the district court need not assume it exists.
 
 
 34
 Furthermore, the record indicates that the union hired an labor consultant with a record of integrity to monitor the 1987 election. His active involvement in the electoral process was apparently effective. We do not find any reason to dispute the district court's finding that the presence of this consultant adequately ensured an untainted election.
 
 
 35
 We also believe that refusing to order a rerun in this case furthers the goals of the LMRDA. First, the union remedied its own internal election abuses. It actively sought outside assistance from a person obviously well-versed in the Title IV election standards. It voluntarily repealed bylaws which violated the LMRDA. The 1987 election was not an attempt by the union to avoid litigation with the Secretary over its past violations by holding a rerun election; rather, it merely sought to ensure that the next regularly-scheduled election proceeded in a democratic fashion. Second, the scarce resources of the Department of Labor will be reserved for future cases in which unions are unwilling or unable to follow the dictates of the LMRDA without agency assistance. Thus, the decision of the district court preserves the balance created by Title IV by allowing the union a large measure of self-governance with effective but limited government interference, while at the same time ensuring to the public union democracy.
 
 CONCLUSION
 
 36
 We hold that the district court has the discretion to refuse to order a supervised election under certain circumstances. While we set no hard and fast rule as to what situations warrant this action, we believe the record supports the finding that the union, in this case, fully remedied the section 401 violations by repealing an unreasonable bylaw and by holding an untainted regularly-scheduled election supervised by an expert labor consultant. Accordingly, the decision of the district court is affirmed.
 
 
 
 *
 The Honorable Gerald W. Heaney assumed senior status on December 31, 1988
 
 
 **
 The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas, sitting by designation